IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | 1:12-CV-1996-TWT |
| v. | : | |
| | : | |
| BENJAMIN DANIEL DEHAAN AND LIGHTHOUSE FINANCIAL PARTNERS, LLC, | : | |
| | : | |
| Defendants. | : | |

## FIRST INTERIM REPORT OF RECEIVER

**COMES NOW**, S. Gregory Hays, the Receiver (the "Receiver") for

Lighthouse Financial Partners, LLC ("Lighthouse"), Defendant in the above

captioned case (the "Case"), by and through counsel, and hereby files this First

Interim Report (the "First Interim Report") showing the Court as follows:

1. This First Interim Report is intended to provide preliminary information

regarding the Receivership Estate and will specifically provide: a) background

information; b) a summary of the activities of the Receiver as of August 30,

2012; c) a summary of the preliminary accounting of funds of investment and

advisory clients prepared by the Receiver as of August 30, 2012, as required

by the Order of this Court appointing the Receiver (Docket No. 11, the "Appointment Order"); d) information regarding certain delays encountered by the Receiver; e) an overview of the assets of the Receiver Estate; and f) information regarding certain future activities by the Receiver. Since the investigation of the Receiver is not complete, this First Interim Report contains a preliminary assessment and is based upon facts currently known to the Receiver. As additional facts are discovered, the information set forth herein may be determined to be incorrect or, more likely, incomplete and will be corrected and updated in subsequent reports filed or distributed by the Receiver.

## A. INTRODUCTION

2. From approximately 2007 until July, 2012, Benjamin Daniel DeHaan ("DeHaan") operated Lighthouse as a purported investment advisory business.

3. Pursuant to correspondence to Lighthouse dated December 14, 2011, a securities examiner and auditor with the Georgia Office of the Secretary of State ("SOS"): a) indicated that Lighthouse was subject to a books and records inspection; and b) requested that Lighthouse produce certain records.

4. On January 31, 2012, an auditor with the SOS visited the offices of Lighthouse to conduct an audit.

5. The Securities and Exchange Commission (the "SEC") subsequently interviewed DeHaan and initiated an investigation of DeHaan and Lighthouse.

6. In an attempt to prevent fraud and potential further dissipation of assets of investors and advisory clients, on June 9, 2012, the SEC initiated this Case by filing a Complaint for Injunctive and Other Relief (Docket No. 1, the "Complaint").

7. Pursuant to the Complaint, from at least approximately January, 2011, through early May, 2012, DeHaan and Lighthouse transferred funds from clients into a certain pass through bank account located at Bank of America (the "Pass Through Account") controlled by DeHaan and subsequently diverted funds in the Pass Through Account to: a) pay business expenses; b) a personal account of DeHaan; or c) pay for acquisitions by DeHaan unrelated to the business of Lighthouse. The Preliminary Report (as hereinafter defined) performed by the Receiver indicates that certain funds from investors and advisory clients were used for the purposes indicated by the SEC in the Complaint.

8. Pursuant to the Complaint, DeHaan attempted to conceal the diversion of funds by providing falsified account statements and making false statements.

9. In order to preserve assets for the benefit of potential defrauded investors and advisory clients, on July 2, 2012, the Court entered the Appointment Order.

10. Among other things, the Appointment Order: a) continued the freeze of the assets of Lighthouse and DeHaan; b) defined the Receivership Estate (as defined in the Appointment Order, the "Receivership Estate"); c) appointed the Receiver of the Receivership Estate; and d) authorized and empowered the Receiver to, among other things, take custody, possession, and control of property of the Receivership Estate, sell property of the Receivership Estate, pursue claims on behalf of the Receivership Estate, and engage professionals.

11. Paragraph IX of the Appointment Order further provides that the "Receiver shall perform an accounting…as soon as possible, but not later than 60 days from the entry of this [Appointment] Order."

12. Pursuant to the terms of the Appointment Order, the Receiver employed the following professionals:

   a. Hays Financial Consulting, LLC, of Atlanta, Georgia, to serve as accountants, forensic examiners, and financial consultants to the Receiver;

   b. James C. Frenzel, PC of Atlanta, Georgia, to serve as counsel for the Receiver; and

c. Harris Shelton Hanover Walsh, PLLC, of Memphis, Tennessee to serve as local counsel for the Receiver in Tennessee to specifically manage issues in connection with real property located in Tennessee.

13. As a result of the employment of qualified professionals, the Receiver has had a team of professionals, including attorneys, Certified Public Accountants, and Certified Fraud Examiners, to assist the Receiver in the: a) administration of the Receivership Estate; b) investigation of the assets, liabilities, and potential recoveries for the benefit of the Receivership Estate; and c) pursuit and enforcement of the Appointment Order and claims of the Receivership Estate (collectively, the Receiver and the professionals of the Receiver are referred to herein as the "Receivership Professionals").

**B. OVERVIEW OF THE ACTIVITIES OF THE RECEIVERSHIP PROFESSIONALS**

14. Soon after the entry of the Appointment Order on July 2, 2012, the Receiver contacted each investor and advisory client known to the Receiver and the Receivership Professionals took action to take control of the Receiver Estate.

15. The Receiver has: a) remained in communication, either directly or through counsel, with investors and advisory clients known to the Receiver; b) disseminated timely updates regarding the status of the administration of the Receivership Estate; and c) posted information and certain documents relevant

to the Receivership Estate online at: http://haysconsulting.net/lighthouse-financial-partners/.

16. After the entry of the Appointment Order, the Receivership Professionals: a) obtained entry and access to the leased offices of Lighthouse and DeHaan located at 3348 Peachtree Road, NE, Tower 200, Ste. 726, Atlanta, GA, 30326 (the "Offices"); b) recovered from the Offices certain records, computers, and other property of the Receivership Estate; and c) began working with DeHaan, former employees of Lighthouse, and other interested parties to enable the Receivership Professionals to: i) understand and investigate the activities of Lighthouse and DeHaan; and ii) accumulate and ultimately distribute the proceeds resulting from the liquidation of the assets of the Receivership Estate to investors and advisory clients with allowed claims.

17. On July 20, 2012, the Receiver obtained the entry of a Stipulation and Agreement (the "Stipulation"), a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference, incident to which DeHaan transferred to the Receivership Estate any interest of DeHaan in certain property identified in an Exhibit A attached to the Stipulation, including, but not limited to, certain real property located in Eads, Tennessee (the "Tennessee Property").

18. In part, the Stipulation is an acknowledgement of the duties of DeHaan pursuant to the Appointment Order to turn over property to the Receivership Estate.

19. Pursuant to Paragraph VII of the Appointment Order, "all persons acting for or on behalf of the Receiver Estate, and all persons receiving notice of this order by personal service or otherwise, having possession of the property, business, books, records, accounts or assets of the Receiver Estate are hereby directed to deliver the same to the Receiver."

20. Pursuant to the turnover provision set forth in the Appointment Order, the Receivership Professionals have recovered funds as of August 30, 2012, of $767,425.90.

21. As of August 30, 2012, the Receivership Estate has: a) incurred fees and expenses, including, but not limited to, fees and expenses incurred by the Receivership Professionals and expenses related to the administration of the Receivership Estate; and b) paid $4,485.19 in necessary expenses.

22. A summary detailing the funds recovered by the Receiver and expenses paid by the Receivership Estate as of August 30, 2012, is attached hereto as Exhibit 2 and incorporated herein by reference.

23. In addition to recovering assets of the Receivership Estate pursuant to the Stipulation and obtaining the turnover of funds to the Receivership Estate, the Receivership Professionals, among other activities, have:

a. Investigated: i) the assets available to or recoverable by the Receivership Estate; ii) potential liabilities of the Receivership Estate; and iii) claims that may be asserted by the Receivership Estate;

b. Interviewed DeHaan at length concerning Lighthouse and his conduct, assets, activities, and culpability for the misappropriation of funds of investors and advisory clients;

c. Interviewed former employees of Lighthouse, co-workers of DeHaan, certain investors and advisory clients, and other third parties with information relevant to the Receivership Estate;

d. Obtained the production of necessary bank statements for accounts of Lighthouse and DeHaan located at Bank of America;

e. Obtained control of a portion of the books and records of the Receivership Estate and moved such books and records to the offices of the Receiver;

f. Obtained access to the email accounts associated with the entities within the Receivership Estate;

g. Taken possession of and imaged the computers and related servers of the Receivership Estate;

h. Engaged in negotiations to terminate the lease of the Offices of Lighthouse;

i. Filed the Appointment Order in Georgia and Tennessee and pursued other actions necessary to preserve the assets of the Receivership Estate;

j. Prepared and obtained the execution by DeHaan of a quitclaim deed (the "Quitclaim Deed") for the transfer of the Tennessee Property, recorded the Quitclaim Deed in Tennessee, negotiated a liquidation plan with the holder of the mortgage on the Tennessee Property, and engaged an agent to sell the Tennessee Property;

k. Issued demands for property of the Receivership Estate;

l. Prepared and has or will be distributing shortly claim forms to be provided to all known investors and advisory clients;

m. Prepared a detailed accounting (the "Detailed Accounting") of all investment advisory funds received by DeHaan or Lighthouse in accordance with the terms of the Appointment Order (a copy of the Detailed Accounting is not attached to this First Interim Report due to

privacy concerns, but is available from the Receiver upon request and, for parties other than the Court or governmental agencies, execution of an appropriate confidentiality agreement); and

n. Initiated the review and analysis of voluminous documents produced to or located by the Receivership Professionals related to the Receivership Estate.

## C. ACCOUNTING

24. In addition to preparing the Detailed Accounting, the Receivership Professionals also prepared a preliminary report (the "Preliminary Report") regarding: a) funds of investors and/or advisory clients delivered to DeHaan and/or Lighthouse; and b) the use of such funds by DeHaan. A copy of the Preliminary Report is attached hereto as Exhibit 3 and incorporated herein by reference. The Preliminary Report and the information set forth therein is preliminary and subject to revision and modification based on the continuing investigation of the Receiver.

25. Pursuant to the Preliminary Report, between January, 2009, and June, 2012, investors and/or advisory clients contributed a total amount of $8,742,927.00 to Lighthouse and received distributions from Lighthouse in the total amount of $3,868,649.03. As further detailed in the Preliminary Report, the resulting

difference in the amount of $4,874,277.97 was used by DeHaan and Lighthouse to: a) pay operating expenses, consultants, and professionals; b) pursue investments; c) make disbursements to DeHaan and family members of DeHaan; and d) purchase property unrelated to the operations of Lighthouse.

26. Based on bank records currently available to the Receiver, between January, 2009, and June, 2012, DeHaan received, directly or indirectly, the benefit of approximately $1,696,724.83 of funds originating from investors and advisory clients or sources yet to be identified by the Receiver.

## D. DELAYS: DEPOSITION OF DEHAAN AND PRODUCTION OF DOCUMENTS BY PAGE PERRY

27. The Receivership Professionals have made substantial progress in administering the Receivership Estate; however, the investigation of the Receiver has been delayed as a result of matters beyond the control of the Receiver.

28. Between 2008 and 2012, Page Perry, LLC ("Page Perry"): a) represented Lighthouse as outside corporate counsel; and b) accumulated and maintained as counsel for Lighthouse certain books, records, accounts and assets (the "Files") that were paid for and the property of Lighthouse.

29. Page Perry has informed the Receiver that the Files consist of at least 36,000 pages of documents in paper and electronic form.

30. The Receiver has: a) requested that Page Perry produce the Files to the Receiver since the Files are now property of the Receivership Estate; b) issued a subpoena for the production of all Files; and c) waived any privilege necessary to receive the production of the Files.

31. Among other requirements, the Appointment Order requires: a) DeHaan to cooperate with and assist the Receiver in the administration of the Receivership Estate and Paragraph, *see* Paragraph VIII; b) DeHaan to appear for a deposition on three (3) days written notice from the Receiver, *see* Paragraph XII; c) DeHaan to produce documents within three days of a request for such documents by the Receiver; *see* Paragraph XIII(B); and d) parties in possession of any property, business, books, records, accounts or assets of the Receiver Estate to deliver such property to the Receiver, *see* Paragraph VII.

32. Despite the requirements set forth in the Appointment Order, the investigation and activities of the Receivership Professionals have been delayed, impeded and hindered due to: a) the failure of counsel for DeHaan to agree to schedule a deposition of DeHaan by the Receiver; b) delayed production of all of the Files; and c) the time and expense necessary to demand, obtain, and enforce

the requirements of the Appointment Order against DeHaan, Page Perry, and third parties.

### I. DEPOSITION OF DEHAAN

33. On July 5, 2012, the Receivership Professionals conducted a preliminary interview of DeHaan. In the preliminary interview, DeHaan admitted that: a) DeHaan and/or Lighthouse accepted approximately $1.6 million in funds from investors and advisory clients that was never placed with a broker-dealer or invested by Lighthouse or DeHaan; and b) such funds were deposited into the Pass Through Account maintained by Lighthouse and used to pay expenses related to business operations or for personal use by DeHaan.

34. On July 11, 2012, the Receiver issued a notice to take the formal deposition of DeHaan originally scheduled for Wednesday July 25, 2012 (the "DeHaan Deposition").

35. At the request of counsel retained by DeHaan on July 13, 2012, Howard J. Weintraub ("Weintraub"), the DeHaan Deposition was postponed and did not occur as scheduled on July 25, 2012.

36. Although DeHaan is required to appear within three (3) days notice by the Receiver pursuant to the Appointment Order, counsel for DeHaan has not yet

agreed to a date for the DeHaan Deposition as requested several times by counsel for the Receiver.

37. The inability of the Receiver to fully depose DeHaan has delayed the investigation of the Receivership Professionals, hinders the ability of the Receiver to perform the duties of the Receiver as required by the Appointment Order in a timely and cost effective manner, and may be exposing certain assets of the Receivership Estate to unnecessary risk or loss.

## II. FILES MAINTAINED BY PAGE PERRY

38. Although Page Perry was required to produce the originals of the Files pursuant to the Paragraph XI of the Receivership Order, Page Perry has: a) not produced the originals of all Files to the Receiver; b) withheld certain documents from production that have yet to be identified to the Receiver; c) produced certain Files in paper and electronic form on a piecemeal basis; and d) produced primarily copies of Files in a form that may not be indexed, searched, or easily reviewed by the Receivership Professionals since the copies were produced as bates numbered pdf files that cannot be easily searched or identified without opening and reviewing each file (the "Produced Documents").

39. The Receivership Professionals have incurred a substantial amount of time in attempting to: a) obtain the production of both the Produced Documents and the remaining Files; and b) review the Produced Documents because of the difficulty in reviewing the Files caused by the delay and method of the production to date by Page Perry.

40. Before producing any Files to the Receiver, Page Perry delivered the Files or copies of the Files to Weintraub as counsel for DeHaan for inspection and prior review with regard to a purported claim of individual attorney-client privilege asserted by DeHaan (the "DeHaan Privilege") without previously seeking advice or protection from the Court with regard to the required production of the original Files.

41. As the Files were being reviewed by Weintraub, Page Perry produced certain Files in installments to the Receiver.

42. More than 30 days after the Receiver originally requested the Files, Page Perry has now produced copies of a majority of the Files, but a number of the Files have been withheld at the insistence of counsel for DeHaan.

43. The Receivership Professionals have not yet reviewed all of the Produced Documents produced by Page Perry in part due to the volume of the Produced Documents and in part because Page Perry produced primarily electronic

copies of the Files with numbered labels rather than the original Files as required by the Appointment Order, and the inability to quickly identify documents has added additional time to the review of the Produced Documents.

44. Although DeHaan has not produced any evidence to demonstrate that: a) Page Perry ever represented DeHaan individually; or b) DeHaan has any privilege or right to the Files, the remaining Files are purportedly being withheld subject to the DeHaan Privilege, which is disputed by the Receiver.

45. Based on a partial review of the Produced Documents to date, significant Files appear to missing, including portions of communications between employees of Lighthouse other than DeHaan and Page Perry and documents related to a mock audit (the "Mock Audit") of Lighthouse performed by Page Perry on behalf of Lighthouse in 2011-12.

46. If Files related to the Mock Audit have been withheld from the production by Page Perry, Page Perry has no basis to continue to withhold such Files since the Mock Audit was performed for and related to the operations of Lighthouse, was fully paid for by Lighthouse, and is not subject to any legitimate claim of DeHaan Privilege.

47. In addition to apparently withholding documents relevant to the operations of Lighthouse, Files appear to have been withheld from the production by Page Perry even though such Files include third-parties and, as such, cannot be subject to a claim of privilege by DeHaan. For example, a spreadsheet related to the Mock Audit appears to have been withheld from production even though the document was originally attached to an email dated March 19, 2012, from Catherine Hardinson (now Henry), an employee of Lighthouse, to Steve Parker of Page Perry, counsel for Lighthouse.

48. On August 10, 2012, Weintraub filed a Motion for a Protective Order (Doc. No. 15, the "Motion for Protective Order") incident to which DeHaan requested until September 10, 2012, to review the Files.

49. On August 14, 2012, the Receiver filed a: a) Response (Docket No. 17, the "Response") by the Receiver to the Motion for Protective Order; and b) Motion (Docket No. 18, the "Motion to Compel") by the Receiver for the entry of an Order: 1) compelling the production of the Files; 2) finding certain parties in contempt of an order of this Court; and 3) scheduling the deposition of DeHaan.

50. The Response and Motion to Compel set forth additional facts detailing the dispute with regard to the production of the Files.

51. In order to avoid continued delays and obtain the expedited production of all of the Files pursuant to the Appointment Order, the Receiver has sought a hearing on the Motion for Protective Order, the Response, and the Motion to Compel (collectively, the "Pleadings").

52. As of the filing of this First Interim Report, counsel for DeHaan has further delayed the investigation by the Receivership Professionals by: a) failing to provide a privilege log detailing the Files sought to be withheld from production to the Receiver pursuant to any claim of DeHaan Privilege; and b) requesting that any hearing on the Pleadings be held only after September 10, 2012.

**E. ASSETS OF THE RECEIVERSHIP ESTATE**

53. Without limiting the assets that may be deemed part of the Receivership Estate, the assets of the Receivership Estate include, but are not limited to: a) certain interests in various entities; b) cash funds; c) the Tennessee Property; d) a section of the Berlin Wall (the "Wall Section"); e) insurance policies; and f) miscellaneous other assets.

**I.  INTERESTS IN ENTITIES RELATED TO LIGHTHOUSE**

54. The assets of the Receivership Estate include interests in various entities related to Lighthouse.

55. Until the end of 2011, DeHaan owned: a) 100% of Lighthouse, DeHaan & Co. Financial Partners, Inc. ("DCFP"), Lighthouse Wealth Management ("LWM"), and the DeHaan Foundation (the "Foundation"); b) 70% of Zodiband, Inc. ("Zodiband") as a result of an investment of an investment of $120,000; and c) a portion of The Brass Door, LLC (the "Brass Door"), a restaurant and Irish pub in Memphis, TN.

56. As a result of a transaction on or about November 30, 2011, DeHaan now individually owns 51% of Lighthouse and DCFP owns the remaining 49% of Lighthouse.

57. As a result of a transaction on or about November 30, 2011, prior to the entry of the Stipulation, DeHaan owned 75.66% of DCFP and Letotech, Inc., ("Letotech"), a software and technology development and consulting company wholly owned by Anatoly Melamud, owned the remaining 24.33% of DCFP.

58. In March, 2012, LWM was purportedly transferred to Corbin Cook, a former employee of Lighthouse.

59. Prior to the entry of the Stipulation, DeHaan owned 49% of Quantplat, LLC ("Quantplat") and Letotech owned the remaining 51% of Quantplat.

60. Pursuant to the Stipulation, DeHaan acknowledged that any interest of DeHaan in DCFP, LWM, the Foundation, Zodiband, the Brass Door and Quantplat is more accurately deemed an asset of the Receivership Estate and, as such, such interests (the "Interests") have been transferred to the Receiver for the benefit of the Receivership Estate.

61. The Receiver will evaluate each of the Interests and make a determination regarding the best method to realize the value of each of the Interests for the benefit of the Receivership Estate.

## II. CASH BALANCE

62. The Receivership Estate has a cash balance as of August 30, 2012, of $762,940.71.

63. The cash will be used to pay necessary expenses of the Receivership Estate and are being held by the Receiver pending a distribution by the Receivership Estate upon further order of this Court.

## III.     TENNESSEE PROPERTY

64. The Tennessee Property was purchased by DeHaan in January, 2012, for $590,000 and is subject to a mortgage in the principal amount of $ $350,000 payable to Financial Federal Savings Bank ("FDSB").

65. The Receivership Professionals have negotiated with FDSB a plan to sell the Tennessee Property and the Receiver has engaged a real estate agent (the "Agent") to sell the Tennessee Property pursuant to a listing agreement to obtain a private sale of the Tennessee Property.

66. The Agent has advised the Receivership Professionals that the Tennessee Property may sell for a higher price if the house located at the Tennessee Property is painted a standard color, certain construction is completed, and yard work is performed prior to the Tennessee Property being shown to prospective purchasers.

67. The Receiver has agreed to: a) use funds of the Receivership Estate in the amount of up to $15,000 to employ contractors to perform the painting, construction, and yard maintenance suggested by the Agent during the process of seeking to sell the Tennessee Property; and b) pay from the proceeds of any sale of the Tennessee Property: i) all applicable commissions and fees due to the Agent; and ii) the balance due to FDSB; and c) recover for the benefit of the Receivership Estate any equity remaining from the proceeds resulting from a sale of the Tennessee Property.

68. The initial listing price of the Tennessee Property will be $590,000.

## IV.  SECTION OF THE BERLIN WALL

69. The Wall Section is currently being held by the Receiver at a storage facility.

70. The Receiver: a) is in the process of obtaining documentation to authenticate that the Wall Section is actually part of the Berlin Wall and evaluating the market for the Wall Section; and b) will make a determination regarding the best method to realize the highest value for a transfer of the Wall Section.

## V.  INSURANCE POLICIES

71. The Receiver has recently discovered the existence of various professional liability insurance policies owned by Lighthouse, with coverage, viability, and claims to be asserted yet to be determined.

## VI.  MISCELLANEOUS OTHER ASSETS

72. The Receiver is currently in possession of miscellaneous other assets of the Receivership Estate, including, but not limited to, season football tickets to the Atlanta Falcons, assets transferred pursuant to the Stipulation, various real property interests of record, vehicles, future recoveries for the benefit of the Receivership Estate, and claims, rights, and interests that may be asserted by the Receivership Estate (the "Other Assets").

73. The Receiver is currently evaluating each of the Other Assets and will make a determination regarding the best method to realize the highest value for each of the Other Assets.

**F. FUTURE ACTIVITIES BY THE RECEIVER**

74. The Receivership Professionals will: a) continue to administer the Receivership Estate and investigate and pursue potential assets of the Receivership Estate; and b) will seek further authority by the Court prior to issuing a distribution to investors and advisory clients with allowed claims.

75. To facilitate a distribution that is both accurate and fair, the Receiver has developed a claim form for investors and a claim form for advisory clients that either has been or will shortly be distributed to known investors and advisory clients and will be available on the website of the Receiver. A deadline will be established for returning all claim forms to the Receiver. Upon receipt of the claim forms, the claims will be reconciled to records of Lighthouse obtained by the Receiver and maintained by the Receivership Professionals.

76. The Receiver may employ contingency counsel to pursue certain claims and/or Other Assets of the Receivership Estate.

77. The Receiver is aware that there may be criminal investigations regarding the conduct of DeHaan, but the Receivership Professionals do not have any information regarding the investigations including any potential criminal prosecution of DeHaan.

Respectfully submitted, this the 31st day of August, 2012.

_____/s/_____
S. Gregory Hays, Receiver for Lighthouse
Financial Partners, LLC, Defendant

Hays Financial Consulting, LLC
Atlanta Financial Center
3343 Peachtree Road, N.E.
East Tower, Suite 200
Atlanta, GA 30326-1420
(404) 926-0051

_____/s/_____
James C. Frenzel
Georgia Bar No. 276830
Counsel for S. Gregory Hays, Receiver for
Lighthouse Financial Partners, LLC, Defendant

Of Counsel:
James C. Frenzel, P.C.
Suite 155, East Tower
Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326
(404) 266-9961
Jcf-bklaw@mindspring.com

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : : : | |
| Plaintiff, | : : | Civil Action File No. 1:12-CV-1996-TWT |
| v. | : : | |
| BENJAMIN DANIEL DEHAAN AND LIGHTHOUSE FINANCIAL PARTNERS, LLC | : : : : | |
| Defendants. | : : | |

## STIPULATION AND AGREEMENT

THIS STIPULATION AND AGREEMENT entered this 20th day of July, 2012, by and between the Defendant, Benjamin Daniel DeHaan ("DeHaan"), and S. Gregory Hays, the Receiver (the "Receiver") appointed by this Court for the Defendant Lighthouse Financial Partners, LLC ("Lighthouse") with regard to certain assets either owned by, in the possession of, or titled in the name of DeHaan, which certain assets are more properly the assets of the Estate of Lighthouse (the "Lighthouse Receivership Estate") subject to the administration of the Receiver:

1. DeHaan hereby transfers, assigns, and conveys to the Receiver for the benefit of the Lighthouse Receivership Estate any and all interest and rights that he has, owns, or is able to assert in the certain assets, properties, valuables, personal property, and real estate set forth in Exhibit "A" attached hereto and incorporated herein by reference (the "DeHaan Assets").

2. The Order Appointing the Receiver entered in this Proceeding on July 2, 2012, provides in part:

The Receiver Estate includes, but is not limited to, all assets acquired for the benefit of Lighthouse and any entities or assets owned by it or clients committed to Lighthouse for the benefit of its advisory clients. The Receiver Estate further includes any assets, wherever situated, which are determined by the Receiver to have been purchased, in whole or part, with the funds of Lighthouse advisory clients.

3. The DeHaan Assets are and will remain the property of the Lighthouse Receivership Estate subject to the administration of the Receiver, which is hereby acknowledged by DeHaan.

4. DeHaan agrees to assist the Receiver with regard to the recovery for the benefit of the Lighthouse Receivership Estate of the DeHaan Assets as follows:

a) Providing information, documentation, receipts, and other paper writings necessary to identify, recover, and transfer the DeHaan Assets from the possession and control of DeHaan to the Receiver for the benefit of the Lighthouse Receivership Estate;

b) Execute and deliver any and all documents and writings necessary to effectuate transfers of title, ownership, or possession as requested by the Receiver in order to achieve the transfer of the DeHaan Assets to the Receiver and an ultimate sale and liquidation of the DeHaan Assets by the Receiver for Lighthouse; and

c) Upon request of the Receiver, DeHaan agrees to surrender and deliver all indicia of title, keys, passwords, statements of origin, and any other transfer documents or personal items necessary to complete the transfer of the DeHaan Assets to the satisfaction of the Receiver.

5. The property scheduled in Exhibit A is based on information supplied to the Receiver by DeHaan as of the date of this Stipulation And Agreement and may be modified and

supplemented upon the mutual consent and agreement between DeHaan, Lighthouse, and the Receiver in the event that additional assets subject to the administration of the Receiver are determined to exist.

6. This Stipulation should not be considered a release or forgiveness of any liability to or obligations owed by DeHaan to the Receiver or to Lighthouse, but is entered between DeHaan, Lighthouse, and the Receiver to assist the Receiver in fulfilling his duties to the Court and the investors of Lighthouse regarding the DeHaan assets.

7. DeHaan acknowledges that this Stipulation And Agreement is agreed to and executed upon the advice and representation of his personal counsel and that he fully understands and agrees to its terms and provisions.

8. DeHaan also agrees that this Stipulation And Agreement may be subsequently filed with the Court and enforced by the Court at the discretion of the Receiver, in addition to being used by the Receiver in support of any motion to dispose of the DeHaan Assets or otherwise administer the Lighthouse Receivership Estate.


Agreed to and stipulated, this 20 day of July, 2012.

Benjamin Daniel DeHaan, Defendant

S. Gregory Hays, not individually but as Receiver for Defendant, Lighthouse Financial Partners, LLC

Sworn to and subscribed before me this 30 day of July , 2012

Notary Public
My Commission expires: 07/30/2012

Reviewed by:

Howard Jarrett Weintraub, Esq.
Georgia Bar No. 746456
Law Offices of Howard J. Weintraub, P.C.
1355 Peachtree St. N.E.
Suite 1250
Atlanta, GA 30309
Counsel for Benjamin Daniel DeHaan, Defendant
law@howardjweintraubpc.com

Prepared by:

JAMES C. FRENZEL, P.C.

_____/s/_____
James C. Frenzel
Georgia Bar No. 276830

Of Counsel:
James C. Frenzel, P.C.
Suite 155, East Tower
Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
(404) 266-9961
jcf-bklaw@mindspring.com

# Exhibit A

Assets of Benjamin D. DeHaan more properly assets of the Lighthouse Receivership Estate

1  Account in the name of Benjamin D. Dehaan at Bank of America (Acct# 003253114641)

2  Account in the name of Benjamin D. Dehaan Funds at TD Ameritrade (Acct# 788-606782)

3  Account in the name of Benjamin D. Dehaan dba Lighthouse Financial Partners at Bank of America (Acct# 003346152054)

4  Ownership interest in Zodiband, Inc.

5  Real Estate and Improvements thereon in Eads, Tennessee (Subject to Mortgage)

6  Investment in The Brass Door restaurant in Memphis.

7  Ownership Interest in Quantplat LLC

8  Ownership Interest in The Dehaan Foundation, Inc.

9  Ownership Interest in Dehaan and Co Financial Partners Inc.

10  Ownership Interest in Lighthouse Wealth Management

11  Deposit for Purchase of lot in Belt, Montana

12  All items of jewelry, clothing or other items of value acquired by DeHaan by payments from Lighthouse accounts

13  Causes of Actions relating to deposits, license fees, franchise fees, and any and all other causes of action which might be brought in the name of Lighthouse or DeHaan, if such causes of action pertain to matters involving any of the assets delineated in this Exhibit A.

14  Investment in Technology by Design, LLC.

15  The interest of DeHaan in 4005 Franks Drive, Tucker, GA 30084, subject to the limited amount of the money invested by DeHaan in such residence, which money was initially derived from Lighthouse accounts.

16  A section of the Berlin Wall with documents of authentication presently stored in Alpharetta, GA

This ⅄ day of July, 2012

Benjamin D. DeHaan / Defendant

Sworn to and subscribed before me
this 20 day of July, 2012

Notary Public
My Commission expires: 07|30|2012

# Exhibit 2

**Recoveries as of 8/30/12**

| Date | Name | Description | Amount |
|---|---|---|---|
| 07/05/12 | Page Perry Lighthouse Special Trust Account | Lighthouse funds transferred to Page Perry | $669,214.09 |
| 07/17/12 | Ally | Settlement amount on payoff of Cadillac loan | $26.61 |
| 07/26/12 | James W. Freeman | Return of solicitor fees | $2,962.78 |
| 07/31/12 | Interactive Brokers LLC | Frozen funds | $95,195.17 |
| 08/09/12 | Page Perry, LLC | Interest earned on funds on deposit | $27.25 |
| | | | $767,425.90 |

**Expenses Paid as of 8/30/12**

| Date | Check # | Name | Description | Amount |
|---|---|---|---|---|
| 07/09/12 | 101 | Catherine Henry | Reimbursement of shipping cost for return of laptop | $85.88 |
| 07/11/12 | 102 | Void | Void | $0.00 |
| 07/11/12 | 103 | CubeSmart | Monthly rental for storage unit for section of Berlin Wall | $182.00 |
| 07/12/12 | 104 | The Norcross Group Inc | Forensic data imaging | $2,850.00 |
| 08/14/12 | 105 | Franklin Street Insurance | Premium Finance Down Payment | $774.38 |
| 08/14/12 | 106 | Premium Assignment Corporation | Insurance Premium. 1 of 4 | $592.93 |
| | | | | $4,485.19 |
| | | | Receiver's Account Balance 8/30/12 | $762,940.71 |

## Exhibit 3

**Preliminary Report for**
**SEC v. Benjamin Daniel Dehaan and Lighthouse Financial Partners, LLC**
**For the Period January 2009 through June 2012**

**Note: This report was prepared based on the current information available to the Receiver as of 8/30/12. The Receiver will continue to research, fine tune, and update this analysis as additional information becomes available.**

**Sources of Funds**

| | |
|---|---|
| Funds from Investors | $8,742,927.00 |
| Other Income/Receipts | $4,898.22 |
| Unclassified | $375,023.74 |
| Total Sources of Funds | $9,122,848.96 |

**Uses of Funds**

| | |
|---|---|
| Payments to Investors | $3,868,649.03 |
| **Uses of Funds** | |
| Payroll & Related Expenses | $271,103.50 |
| Office Supplies and Expenses | $198,127.07 |
| Office Lease Payments | $188,633.21 |
| Meals and Entertainment | $142,752.34 |
| Consultants | $648,140.61 |
| Professional Firms | $433,971.75 |
| Condominium Rent | $108,600.00 |
| Other | $121,206.43 |
| LetoTech, Inc. (License Fees) | $263,736.96 |
| Quantplat LLC (License Fees) | $115,900.00 |
| Unclassified | $405,434.45 |
| | $2,897,606.32 |
| **Payments to/For Benjamin Dehaan** | |
| Cash Withdrawals | $28,677.15 |
| Cadillac | $33,058.81 |
| Claire Hall | $156,885.30 |
| Payroll | $117,927.75 |
| Personal Expenses from Company Accounts | $199,691.37 |
| Elizabeth Dehaan | $217,019.53 |
| Transfers to/from Dehaan Personal Accounts | $943,464.92 |
| | $1,696,724.83 |
| **Investment/Assets** | |
| Berlin Wall (Storage) | $2,369.95 |
| Page Perry Escrow | $575,000.00 |
| To/From Interactive Brokers | $62,859.13 |
| Technology by Design | $83,674.77 |
| Zodiband | $14,000.00 |
| | $737,903.85 |
| Total Uses of Funds | $9,200,884.03 |
| | ($78,035.07) (1) |

(1) The difference between the sources and uses of funds is explained by the difference between the 1/1/09 cash balance and the 6/30/12 cash balance.

## CERTIFICATE OF COMPLIANCE

This is to certify that to the best of my knowledge this document has been prepared with one of the font and point selections approved by the Court in LR 5.1B, pursuant to LR 7. Specifically, the above-mentioned document has been prepared using Times New Roman font, 14 point.

This, the 31st day of August, 2012.

Respectfully submitted,

_____/s/_____
James C. Frenzel
Georgia Bar No. 276830
Counsel for S. Gregory Hays, Receiver for Defendant, Lighthouse Financial Partners, LLC

Of Counsel:
James C. Frenzel, P.C.
Suite 155, East Tower
Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326
(404) 266-9961
Jcf-bklaw@mindspring.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

v.

BENJAMIN DANIEL DEHAAN AND
LIGHTHOUSE FINANCIAL
PARTNERS, LLC

                Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action File No.
1:12-CV-1996-TWT

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the

FIRST INTERIM REPORT OF RECEIVER in a sealed envelope by first class

mail with postage adequate to insure delivery to:

Edward G. Sullivan, Esq.
U.S. Securities and Exchange Commission
3475 Lenox Road
Suite 1000
Atlanta, GA 30326

S. Gregory Hays, Receiver
Hays Financial Consulting, LLC
3343 Peachtree Road, NE, Suite 200
Atlanta, GA 30326

Howard J. Weintraub, Esq.
Counsel for Benjamin Daniel DeHaan
Law Offices of Howard J. Weintraub, P.C.
1355 Peachtree Street, NE, Suite 1250
Atlanta, GA 30309

Matthew G. McLaughlin, Esq.
Counsel for Page Perry, LLC
Hawkins Parnell Thackston & Young, LLP
4000 SunTrust Plaza
303 Peachtree Street NE
Atlanta, Georgia 30308-3243

J. Steven Parker, Esq.
Robert D. Terry, Esq.
Page Perry, LLC
1040 Crown Pointe Parkway
Suite 1050
Atlanta, Georgia 30338

This, the 31st day of August, 2012.

Respectfully submitted,

_____/s/_____
James C. Frenzel
Georgia Bar No. 276830
Counsel for S. Gregory Hays, Receiver for Defendant, Lighthouse Financial Partners, LLC

Of Counsel:
James C. Frenzel, P.C.
Suite 155, East Tower
Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326
(404) 266-9961
Jcf-bklaw@mindspring.com